<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| LOCAL 825, 825A, 825B, 825C, 825D, 825R and 825RH OF INTERNATIONAL UNION OF OPERATING ENGINEERS, | : : : | |
| Plaintiff, | : : | Civil Action No. 06-4784 (JAG) |
| v. | : : | **OPINION** |
| TUCKAHOE SAND & GRAVEL , | : : | |
| Defendant. | : | |

<u>**GREENAWAY, JR., U.S.D.J.**</u>

This matter comes before this Court on (1) the motion for summary judgment confirming an arbitration award, pursuant to FED. R. CIV. P. 56(c), by Plaintiff Local Union No. 825, 825A, 825B, 825C, 825D, 825R and 825RH of the International Union of Operating Engineers ("Plaintiff" or the "Union"); and (2) the cross-motion for summary judgment, pursuant to Fed. R. Civ. P. 56(c), by Defendant Tuckahoe Sand & Gravel Co., Inc. ("Defendant" or "TSG").  For the reasons set forth below, Plaintiff's motion will be granted in part and denied in part, and Defendant's motion will be denied.

**I.  INTRODUCTION**

The Union filed the instant action on September 7, 2006, in New Jersey Superior Court, seeking to confirm an arbitration award it had obtained against TSG, pursuant to N.J. STAT. ANN. § 2A:24-7.  On October 5, 2006, TSG removed this action to this Court on the ground that the

1

Union's action is preempted by the Labor Management Relations Act ("LMRA") because it concerns an arbitration award arising out of a collective bargaining agreement.

On November 11, 2006, the Union moved this Court for summary judgment seeking to confirm the arbitration award against TSG.  Through their motion, the Union also seeks pre-judgment interest on the amount due, reasonable attorneys' fees, and costs.  On December 26, 2006, TSG cross-moved for summary judgment on the grounds that: (1) the arbitrator exceeded his authority by issuing a second award despite being *functus officio*;[1] and (2) in the second award, the arbitrator exceeded his authority by ordering relief not available under the governing collective bargaining agreement.  TSG also argues that if this Court grants the Union's motion for summary judgment, the Union is not entitled to an award of interest, fees, or costs.

## II.  <u>FACTUAL BACKGROUND</u>

### A.      <u>The Parties</u>

The Union is a labor organization with its principal place of business in Springfield, New Jersey.  (Pl.'s Facts, ¶ 1; Def.'s Facts, ¶ 1; Grace Aff., ¶ 2.)  TSG is a business incorporated in New Jersey, with its principal place of business in Tuckahoe, New Jersey.  (Pl.'s Facts, ¶ 2; Def.'s Facts, ¶ 2; Compl., ¶ 3; Answer, ¶ 3.)

The Union is the exclusive collective bargaining representative of all the loader operators, plant operators, dredge operators, yardmen, cleaners, painters, and mechanics employed by TSG. (Pl.'s Facts, ¶ 3; Def.'s Facts, ¶ 3; Grace Aff., ¶ 4, Exh. A.)  The Union and TSG have been in a collective bargaining relationship for a number of years.  (Pl.'s Facts, ¶ 4; Def.'s Facts, ¶ 4; Grace Aff., ¶ 5.)  The relevant collective bargaining agreement between the parties commenced

---

[1]*Fuctus officio* is Latin for "a task performed."

on February 1, 2003, and expired on January 31, 2006 (the "CBA").  (Id.; Grace Aff., ¶ 5, Exh.

A.)

### B.   The Collective Bargaining Agreement

#### 1.   *General Provisions*

The CBA does not contain a negotiated provision relating to the manner in which TSG

may assign, or in which bargaining-unit employees may claim, specific job assignments, shift

assignments,  or shift equipment.  (Def.'s Facts, ¶ 5; Pl.'s Reply Facts, ¶ 5.)

#### 2.   *Grievance Procedure*

The CBA, under the heading "Grievance Procedure," provides the following:

A Grievance shall be considered to be a difference of opinion between an
Employee and the Employer regarding the administration, interpretation or
application of the terms of this Agreement.

Grievances shall be handled and settled in the following manner:

**STEP NO. 1: The Shop Steward will take the matter up with the
Superintendent of the Plant, and they shall attempt to adjust any such
Grievance.**

**STEP NO. 2: The Shop Steward will take the matter up with the Business
Representative of the Union in the event he fails to adjust any such grievance
with the Superintendent.
The Business Representative of the Union, in turn, will contact the proper
designated official of the Employer within [a] five (5) work day period of
time and the matter discussed.**

**STEP NO. 3: If the grievance is not settled within [a] five (5) work day
period or if the Union or Employer has a grievance, and if the parties cannot
agree upon an arbitrator, either of them may request the New Jersey State
Board of Mediation to submit a list of arbitrators, from which an arbitrator
shall be selected in accordance with that Board's procedures.**

(Pl.'s Facts, ¶ 5; Grace Aff., ¶ 5, Exh. A, Art. X.)

3

The CBA does not contain a provision limiting the scope of an arbitrator's remedial authority, nor does it contain any provision that would prohibit an arbitrator from reinstating a grievant to his pre-termination position.  (Pl.'s Reply Facts, ¶ 5; Grace Aff., Exh. A.)

**C.    The Arbitration**

On or about September 6, 2005, TSG terminated Union member David Demarest.  (Pl.'s Facts, ¶ 6; Def.'s Facts, ¶ 6; Compl., ¶ 7; Answer, ¶ 7.)  At the time of his discharge, Demarest had held the loader operator position for 13-14 years.  (Pl.'s Reply Facts, ¶ 5; Grace Aff., Exh. C at 4.)  A grievance regarding Demarest's termination was subsequently filed.  (Pl.'s Facts, ¶ 7; Def.'s Facts, ¶ 7; Compl., ¶ 8; Answer, ¶ 8.)  The Demarest matter was not resolved by the parties during the grievance process.  (Id.)

In accordance with the CBA, Demarest's grievance was submitted to arbitration for resolution.  (Pl.'s Facts, ¶ 8; Def.'s Facts, ¶ 8; Compl., ¶ 10; Answer, ¶ 10.)  The New Jersey State Board of Mediation designated Gerard G. Restaino as the arbitrator.  (Pl.'s Facts, ¶ 9; Def.'s Facts, ¶ 9; Compl., ¶ 11; Answer, ¶ 11.)  The arbitrator notified the parties of the time, place and date of the arbitration hearing, which was held on February 24, 2006, at the offices of TSG.  (Pl.'s Facts, ¶¶ 10, 12; Def.'s Facts, ¶¶ 10, 11; Compl., ¶¶ 12, 13; Answer, ¶¶ 12, 13.)  At the February 24, 2006 arbitration, the arbitrator heard sworn testimony from various witnesses and argument from counsel.  (Pl.'s Facts, ¶ 12; Def.'s Facts, ¶ 11; Compl., ¶ 13; Answer, ¶ 13.)

At the hearing, TSG and the Union stipulated to the issue to be resolved by the arbitrator: "Did [TSG] have just cause to terminate David Demarest?  If not, what shall the remedy be?" (Def.'s Facts, ¶ 11; Grace Aff., Exh. B at 1.)  The Union requested of the arbitrator that "the grievance be sustained and the grievant be returned to work with full back pay and benefits."  (Id.

at 8.)

### D.      The March 18, 2006 Award

On March 18, 2006, the arbitrator issued an Opinion and Award.  (Pl.'s Facts, ¶ 12;

Def.'s Facts, ¶ 12; Grace Aff., Exh. B.)  He found that TSG did not have just cause to terminate

Demarest, and ordered that Demarest be reinstated with mitigated back pay.  (Pl.'s Facts, ¶ 12;

Def.'s Facts, ¶ 12; Grace Aff., Exh. B at 13.)  The March 18, 2006 Award specifically provided:

> **AWARD**
> The grievance is sustained.  The Employer did not have just cause to
> terminate David Demarest.  He shall be returned to work with full back pay less
> mitigation, and the Employer shall be responsible for any out-of-pocket medical
> benefits and/or COBRA payments.
> The grievant shall produce statements to substantiate any claim for
> medical payment.  Additionally, the grievant shall produce paycheck stubs for any
> full or part-time employment he had during the period of September 6, 2005,
> through to the date of this Award.

(Id.)

The arbitrator retained jurisdiction to resolve disputes regarding the Award.  (Id.)

### E.      The Supplemental Award

After the arbitrator issued the March 18, 2006 Opinion and Award, TSG reinstated

Demarest, but not to his former (pre-termination) position as a loader operator.  (Pl.'s Facts, ¶ 13;

Grace Aff., ¶ 14; Def.'s Facts, ¶ 13.)  By a letter dated April 11, 2006, the Union requested that

the arbitrator schedule a hearing to resolve what it perceived as a dispute between the parties

regarding the arbitrator's March 18, 2006 Award.  (Pl.'s Facts, ¶ 14; Def.'s Facts, ¶ 14; Pl.'s

Reply Facts, ¶ 15; Grossman Aff., Exh. A.).  The April 11, 2006 letter provided, in pertinent part:

> We are in receipt of your Final Opinion and Award concerning the above-
> referenced matter.  You did retain jurisdiction over this matter if there were any
> further disputes over the issuance of the Award.

5

The Employer has failed to return Mr. Demarest to his former position. The Employer is denying Mr. Demarest overtime opportunities in retaliation for the Arbitration Award.

There is clearly a dispute between the parties as to the amount of back pay and benefits owed to Mr. Demarest.  We are hereby requesting that you schedule a hearing concerning this matter as soon as possible.

(Def.'s Facts, ¶ 14; Pl.'s Facts, ¶ 14; Grossman Aff., Exh. A.)  The letter thus raised three issues:

(1) TSG's failure to return Demarest to his pre-termination position; (2) alleged retaliatory denial

of overtime opportunities; and (3) the dispute over the amount of back pay and benefits owed.

(Id.)

The arbitrator scheduled and held a hearing on June 20, 2006, at which time he heard

witnesses and argument of counsel.  (Pl.'s Facts, ¶¶ 15-16; Def.'s Facts, ¶¶ 15-16; Pl.'s Reply

Facts, ¶¶ 15-16; Compl., ¶¶ 18-19; Answer, ¶¶ 18-19.)  At the June 20, 2006 hearing, the

arbitrator heard evidence and arguments that had not been presented at the February 24, 2006

arbitration.  (Id.; Grace Aff., Exh. C at 2-6.)

On August 3, 2006, the arbitrator issued a Supplemental Award, which provided:

**SUPPLEMENTAL AWARD**

The Union's position is sustained.  This Supplemental Award returns Mr. Demarest to the loader operator position with the built in overtime that was established prior to his termination.  He shall be returned to the loader operator position no later than 10 working days from the date of this Supplemental Award.

The Employer shall be responsible for the pension and welfare contributions as established in Exh. U-6, which is attached to and made part of this Award.  The Employer shall pay Mr. Demarest's medical expenses of $146.24 as set forth in Exh. U-3.  The Employer shall not be responsible for COBRA payments.

Any concerns over Mr. Demarest's comportment and demeanor with customers must be addressed under the rubric of the grievance procedure and binding arbitration as established in Article X of the Agreement.

I shall retain jurisdiction until notified that Mr. Demarest has received the back pay calculations as set forth in Exh. U-6 and the Union has received the

pension and welfare contributions also established by Exh. U-6.

(Grace Aff., Exh. C at 9.)

This Supplemental Award differed from the March 18, 2006 Award in two ways: (1) the arbitrator ordered TSG to return Demarest to the "loader operator position with the built in overtime that was established prior to termination"; and (2) in addition to back pay, the arbitrator also ordered TSG to pay pension and welfare contributions.  (Def.'s Facts, ¶ 19; Pl.'s Reply Facts, ¶ 19; Grace Aff., Exh. C at 9.)

### F.   Subsequent Events

By a letter dated May 7, 2007, Plaintiffs' counsel advised this Court that since the parties' motions were filed, TSG again terminated Demarest.  (See Docket No. 14.)  No grievance was filed, and there is no dispute regarding Demarest's recent discharge.  According to Plaintiffs' counsel, Demarest's discharge renders moot the question of whether the arbitrator exceeded his authority by ordering TSG to reinstate Demarest to his former loader operator position.  The remaining issues before this Court are (1) whether the arbitrator's Supplemental Award exceeded his authority under the doctrine of *functus officio*; and (2) whether the arbitrator had the authority to award back pay and welfare pension contributions to Demarest.

## III.  DISCUSSION

### A.   Applicable Legal Standards

#### 1.   *Legal Standard Governing Motions For Summary Judgment*

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S.

7

317, 322-23 (1986).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party."  In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003) (quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)).  "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists.  Jersey Cent. Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985).  The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial.  Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995).  "[U]nsupported allegations .

8

. . and pleadings are insufficient to repel summary judgment." <u>Schoch v. First Fid.</u>

<u>Bancorporation</u>, 912 F.2d 654, 657 (3d Cir. 1990); <u>see</u> <u>also</u> FED. R. CIV. P. 56(e) (requiring

nonmoving party to "set forth specific facts showing that there is a genuine issue for trial"). "A

nonmoving party has created a genuine issue of material fact if it has provided sufficient

evidence to allow a jury to find in its favor at trial." <u>Gleason v. Norwest Mortg., Inc.</u>, 243 F.3d

130, 138 (3d Cir. 2001).

    If the nonmoving party has failed "to make a showing sufficient to establish the existence

of an element essential to that party's case, and on which that party will bear the burden of proof

at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts

immaterial." <u>Katz v. Aetna Cas. & Sur. Co.</u>, 972 F.2d 53, 55 (3d Cir. 1992) (quoting <u>Celotex</u>,

477 U.S. at 322-23).

### 2.    *Legal Standard Governing Motions To Confirm An Arbitration Award*

    "In a proceeding to confirm or vacate an arbitration award, a court's review is exceedingly

narrow." <u>Eichleay Corp. v. International Ass'n of Bridge, etc.</u>, 944 F.2d 1047, 1055-56 (3d Cir.

1991). "An arbitration award can be vacated only if it does not draw its essence from the

collective bargaining agreement." <u>Id.</u> at 1056 (citing <u>Roberts & Schaefer Co. v. Local 1846,</u>

<u>United Mine Workers</u>, 812 F.2d 883, 885 (3d Cir. 1987)). "The district court may not vacate an

arbitration award merely because it would decide the merits differently." <u>Eichleay</u>, 944 F.2d at

1056 (citing <u>Tanoma Mining Co. v. Local Union No. 1269, United Mine Workers</u>, 896 F.2d 745,

747 (3d Cir. 1990)). "So long as the arbitration award has some support in the record, and the

arbitrator has not manifestly disregarded the law," the district court must affirm the award.

Eicheleay, 944 F.2d at 1056 (citing Tanoma, 896 F.2d at 748-49).

**B.      Whether The Supplemental Award Exceeds The Arbitrator's Authority**

**Under The Doctrine Of *Functus Officio***

TSG first argues that it is entitled to an order declaring that the August 3, 2006

Supplemental Award is unenforceable because the arbitrator was *functus officio* as to all issues

but the calculation of back pay.  The Union argues that the Supplemental Award is not barred by

the doctrine of *functus officio* because the Supplemental Award falls within the completion

exception and/or the ambiguity exception to the doctrine.

**1.      *Legal Standard Governing The Doctrine of* Functus Officio**

*Functus officio*, Latin for "a task performed," refers to "a common-law doctrine barring

an arbitrator from revisiting the merits of an award once it has issued."  Office & Professional

Employees Intern. Union, Local No. 471 v. Brownsville General Hosp., 186 F.3d 326, 331 (3d

Cir. 1999); see also Teamsters Local 312 v. Matlack, Inc., 118 F.3d 985, 991 (3d Cir. 1997).  See

also Bayne v. Morris, 68 U.S. (1 Wall) 97, 99 (1863) ("arbitrators exhaust their power when they

make a final determination on the matters submitted to them. They have no power after having

made an award to alter it; the authority conferred on them is then at an end").  "The doctrine is

motivated by a perception that arbitrators, lacking the institutional protection of judges, may be

more susceptible to outside influences pressuring for a different outcome and also by the

practical concern that the ad hoc nature of arbitral tribunals makes them less amenable to

re-convening than a court."  Brownsville, 186 F.3d at 331.

"The doctrine of *functus officio* . . . was applied strictly at common law to prevent an

arbitrator from in any way revising, re-examining, or supplementing his award."  Matlack, 118

F.3d at 991.  Following the Supreme Court's decision in <u>Textile Workers Union v. Lincoln Mills</u>, 353 U.S. 448 (1957), which held that § 301 directs the federal courts to create a "common law of labor arbitration," however, "the federal courts have been less strict in applying the [doctrine] in reviewing labor disputes."  <u>Brownsville</u>, 186 F.3d at 331 (quoting <u>Matlack, Inc.</u>, 118 F.3d at 991).

The Third Circuit has recognized the following three exceptions to the *funtus officio* rule: (1) an arbitrator "can correct a mistake which is apparent on the face of the award;" (2) "where the award does not adjudicate an issue which has been submitted, then as to such issue the arbitrator has not exhausted his function and it remains open to him for subsequent determination;" and (3) "[w]here the award, although seemingly complete, leaves doubt whether the submission has been fully executed, an ambiguity arises which the arbitrator is entitled to clarify."  <u>Colonial Penn Ins. Co. v. Omaha Indem. Co.</u>, 943 F.2d 327, 332 (3d Cir. 1991) (citations omitted; brackets in original) (quoting <u>La Vale Plaza, Inc. v. R.S. Noonan, Inc.</u>, 378 F.2d 569, 573 (3d Cir. 1967)).

These exceptions to the *functus officio* doctrine "were narrowly drawn to prevent arbitrators from engaging in practices that might encourage them to change their reasoning about a decision, to redirect a distribution of an award, or to change a party's expectations about its rights and liabilities contained in an award."  <u>Matlack</u>, 118 F.3d at 992 (citing <u>Colonial Penn</u>, 943 F.2d at 332 (emphasizing need to prevent parties from attempting to persuade arbitrators "to overturn an adverse award")).  "Therefore, whether a case falls within one of these categories must be considered in light of the underlying rationale for the modern application of *functus officio*."  <u>Matlack</u>, 118 F.3d at 992.

In this case, the Union has invoked the second and third of these exceptions in their defense of the arbitrator's Supplemental Award.  The second exception set forth above, which authorizes an arbitrator to decide a remaining issue that has been submitted by the parties, but not resolved, has been rationalized by the Third Circuit on the ground that "the arbitration agreement between the parties is still in force and the arbitrator's power over the remainder of the unresolved submission continues."  Matlack, 118 F.3d at 992.  The arbitrator, therefore, "is not exposed to any greater risk of impropriety than would normally exist during the pendency of the arbitration proceedings."  Id.  (quoting La Vale, 378 F.2d at 573).

The Third Circuit has rationalized that the third category above, which allows an arbitrator to clarify an ambiguity in a "seemingly complete" award when there is "doubt whether the submission has been fully executed," Colonial Penn, 943 F.2d at 332, "would not undermine the policy considerations that prohibit arbitrators from re-examining awards 'for there is no opportunity for redetermination on the merits of what has already been decided." Matlack, 118 F.3d at 992 (quoting La Vale, 378 F.2d at 573).

## 2. *Whether The Completion Exception Applies*

The Union first argues that the arbitrator's Supplemental Award falls within the second exception, i.e., the "completion exception," to the *functus officio* doctrine.  TSG counters that the completion exception does not apply in this case because (1) the parties had stipulated to the issue before the arbitrator (whether TSG had just cause to terminate Demarest, and if not, what remedy would be appropriate); and (2) the arbitrator decided those issues with clarity and finality in his initial Opinion and Award.

The second exception to the *funtus officio* doctrine permits an arbitrator to revisit an

issued award "where the award does not adjudicate an issue which has been submitted."  Here,

the stipulated issues before the arbitrator were the following: "Did [TSG] have just cause to

terminate David Demarest?  If not, what shall the remedy be?"  (Grace Aff., Exh. B at 1.)  In his

initial Opinion and Award, the arbitrator found that TSG did not have just cause to terminate

Demarest, and ordered that Demarest be reinstated with mitigated back pay.  (Grace Aff., Exh. B

at 13.)  The Opinion and Award thereby adjudicated both issues before the arbitrator.  The

completion exception cannot overcome the *functus officio* doctrine or justify the arbitrator's

issuance of the Supplemental Award, as a result.  See, e.g., Matlack, 118 F.3d at 992 (finding the

second exception to the *functus officio* doctrine did not apply where the arbitrator did not "leave

undecided a particular issue submitted by the parties").

### 2.        *Whether The Ambiguity Exception Applies*

The Union next argues that the third exception to the *functus officio* doctrine, i.e., the

"ambiguity exception," justifies the arbitrator's Supplemental Award.  TSG counters that the

third exception does not apply because the arbitrator "fully and unambiguously executed the

submission of his first award."  (Def.'s Opp. at 6.)

The third exception to the *functus officio* doctrine permits an arbitrator to revisit an initial

award "[w]here the award, although seemingly complete, leaves doubt whether the submission

has been fully executed, [and] an ambiguity arises which the arbitrator is entitled to clarify."

Colonial Penn, 943 F.2d at 332.

In this case, the arbitrator's initial Opinion and Award provided, in pertinent part, that

TSG "did not have just cause to terminate David Demarest.  He shall be returned to work with

full back pay less mitigation, and the Employer shall be responsible for any out-of-pocket

medical benefits and/or COBRA payments." (Grace Aff., Exh. B at 13.) After the Opinion and Award was issued, the Union appealed to the arbitrator for a hearing to address TSG's purported denial of overtime opportunities to Demarest, and a dispute between the parties over the "amount of back pay and benefits owed to Mr. Demarest." (Grossman Aff., Exh. A.) The Supplemental Award, issued in response to the disputes set forth in the Union's appeal provided that Demarest would be returned "to the loader operator position with the built in overtime that was established prior to his termination," and that TSG "shall be responsible for the pension and welfare contributions." (Grace Aff., Exh. C at 9.) The Supplemental Award further provided that TSG "shall pay Mr. Demarest's medical expenses of $146.24 as set forth in Exh. U-3. The Employer shall not be responsible for COBRA payments."[2] (Id.)

This Court must decide whether the arbitrator's Supplemental Award's provisions for a return to the loader operator position with built in overtime, and for pension and welfare contributions, clarified an ambiguity in the initial Opinion and Award, which provided that Demarest be "returned to work with full back pay less mitigation, and the Employer shall be responsible for any out-of-pocket medical benefits and/or COBRA payments" (Grace Aff., Exh. B at 13).

The arbitrator's Opinion and Award ordering that Demarest be "returned to work" is ambiguous as to whether TSG had to return Demarest to his exact former position, or whether he was to be restored to comparable employment. The arbitrator's Supplemental Award clarified this ambiguity by mandating that Demarest be returned "to the loader operator position with the

---

[2]It appears that the reason COBRA payments were excluded from the Supplemental Award was because Demarest had failed to demonstrate that he had made any money during the gap in his employment with TSG.

built in overtime" he had enjoyed during his pre-termination employment.  (Grace Aff., Exh. C at 9.)

Similarly, the arbitrator's Opinion and Award, which provided for TSG to pay Demarest "back pay" as well as any "medical benefits," is ambiguous as to whether TSG was responsible for pension and welfare contributions that would have been made had Demarest not been wrongly terminated by TSG.  The Supplemental Award sorted out this ambiguity by clearly stating that TSG was required to pay pension and welfare contributions.  (Grace Aff., Exh. C at 9.)

Federal appellate courts addressing similar circumstances have found that where "back pay" or other benefits are the subject of an initial award, and a dispute arises as to the nature or amount of the initial award, "the normal course of action is to treat the award as ambiguous [ ] and remand the dispute to the original arbitrator to clarify the award."  Aluminum Brick & Glass Workers v. AAA Plumbing, 991 F.2d 1545, 1549 (11th Cir. 1993); see also Local 2322, Intern. Broth. of Elec. Workers v. Verizon New England, Inc., 464 F.3d 93, 100 (1st Cir. 2006) (finding that where the nature of an award was ambiguous regarding "back pay" the award is sufficiently ambiguous to warrant reconsideration); Longo de Puerto Rico, Inc. v. United Steel Workers of America, AFL-CIO-CLC, 463 F. Supp. 2d 159, 163 (D.P.R. 2006) ("Once the arbitrator was put on notice that her paucity in expressing the award had caused confusion as to her intention, she was authorized, functus officio notwithstanding, to clarify her award so as to render completely unambiguous her original intention that Mr. Parrilla return to work and be provided back pay for the time after the conclusion of the fifteen day suspension.").  Under such circumstances, there is "doubt whether the submission has been fully executed" by the arbitrator, and it would not

"undermine the policy considerations that prohibit arbitrators from re-examining awards 'for

there is no opportunity for redetermination on the merits of what has already been decided,'" i.e.,

liability of the employer for back pay or other benefits.  <u>Matlack</u>, 118 F.3d at 992; <u>Colonial Penn</u>,

943 F.2d at 332; <u>La Vale</u>, 378 F.2d at 573.

The Supplemental Award falls into the third exception to the *functus officio* doctrine; it

clarified ambiguities in the initial Opinion and Award, and therefore did not exceed the scope of

the arbitrator's authority.[3]  TSG's motion for summary judgment vacating the arbitrator's

Supplemental Award, pursuant to the *functus officio* doctrine, is denied.

### C.      **Whether The Supplemental Award Exceeds The Arbitrator's Authority By Awarding Relief Not Available Under The Collective Bargaining Agreement[4]**

#### 1.      *Legal Standard Governing Review of Arbitration Awards*

"A collective bargaining agreement represents a contractual accord reached between an

employer and its employees."  <u>Brentwood Medical Associates v. United Mine Workers of</u>

<u>America</u>, 396 F.3d 237, 240 (3d Cir. 2005).  "If such a contract includes an arbitration clause, it

is assumed that the parties bargained for a grievance resolution procedure in which an arbitrator

―――――――――――――

[3]The Union also argues that the arbitrator's stated retention of jurisdiction exempted his award from the constraints of the *functus officio* doctrine.  Because this Court has found that one of the clearly delineated exceptions to the *functus officio* doctrine permits the arbitrator's Supplemental Award, it need not address the merits of the Union's argument regarding express retention of jurisdiction at this juncture.

[4]The only issue addressed by this section is whether the arbitrator had the authority to award back pay and welfare pension contributions to Demarest.  The parties have informed this Court that the arbitrator's authority to reinstate Demarest with built-in overtime is no longer at issue due to Demarest's recent unchallenged termination by TSG.  Accordingly, this Court need not address the arguments made by the parties related to reinstatement with overtime because that issue is moot.

would interpret the agreement.   It is thus not the role of a court to correct factual or legal errors made by an arbitrator." Id. (citing Major League Umpires Ass'n v. American League of Professional Baseball Clubs, 357 F.3d 272, 279 (3d Cir. 2004)).

"A district court may determine only whether or not an arbitrator's award 'draws its essence' from the parties' collective bargaining agreement." Brentwood, 397 F.3d at 240-41 (quoting United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 36 (1987)). "Once a court is satisfied that an arbitrator's award draws its essence from a collective bargaining agreement, it is without jurisdiction to consider the award further." Brentwood, 397 F.3d at 241.

"An award draws its essence from a collective bargaining agreement if its interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention." Id. (citing United Transp. Union Local 1589 v. Suburban Transit Corp., 51 F.3d 376, 379-80 (3d Cir. 1995)). "As a general rule, we must enforce an arbitration award if it was based on an arguable interpretation and/or application of the collective bargaining agreement, and may only vacate it if there is no support in the record for its determination or if it reflects manifest disregard of the agreement, totally unsupported by principles of contract construction." Exxon Shipping Co. v. Exxon Seamen's Union, 993 F.2d 357, 360 (3d Cir. 1993) (internal quotation marks omitted).  The district court cannot disturb an arbitration award "even if [it] find[s] the basis for it to be ambiguous or disagrees with [the arbitrator's] conclusions under the law." Citgo Asphalt Refining Co. v. Paper, Allied-Indus., Chem. & Energy Workers Int'l Union Local No. 2-991, 385 F.3d 809, 816 (3d Cir. 2004) (quoting Stroehmann Bakeries, Inc. v. Local 776, Int'l Bhd. of Teamsters, 969 F.2d 1436, 1441 (3d Cir. 1992)).

17

2.      *Whether The Arbitrator Exceeded His Authority By Awarding Back Pay*
        *and Benefit Contributions*

The Union argues in its brief that the arbitrator did not exceed the scope of his authority, and that he did not disregard the CBA when he ordered that back pay and benefit contributions be made by TSG.  TSG only argues that the arbitrator disregarded the CBA in the portion of the Supplemental Award reinstating Demarest to his former loader operator position.  TSG does not argue that the back pay or benefit portion of the Award was outside the scope of the arbitrator's authority.  Thus, this Court finds that TSG has acquiesced to the Union's argument that the arbitrator's award of back pay and benefits did not disregard the CBA, and has abandoned any contrary contentions.  See Testa v. Town of Madison, No. Civ. 04-185-B-W, 2005 WL 2365319, at * 12 (D. Me. Sept. 26, 2005) ("The Town argues that the existing record cannot support Testa's defamation claim.  Testa fails to oppose this aspect of the motion in her opposition memorandum.  Accordingly, Testa has abandoned her defamation claim and judgment should enter in favor of the Town on count II"); Bayne v. Provost, No. 1:04 CV 44, 2005 WL 1871182, at * 4 (N.D.N.Y. Aug. 4, 2005) ("The failure to oppose a motion for summary judgment on a certain claim is deemed abandonment of the claim"); Moss v. Technicolor, Inc., No. CV-99-05601-WJR (Mcx), 2001 WL 1472673, at * 16 (C.D. Cal. May 4, 2001) ("This Court concludes that this claim should be dismissed because Plaintiffs have abandoned it. Plaintiffs failed to oppose Defendants' various attacks on these claims. As such, Plaintiffs failed to meet their burden . . . In other words, Plaintiffs have conceded this issue").  For this reason, to the extent TSG seeks summary judgment vacating the

18

arbitrator's Supplemental Award on the ground that the arbitrator exceeded his authority, TSG's motion is denied.

Because the arbitrator did not exceed the scope of his authority by awarding back pay and benefit contributions, and because, as explained above, the arbitrator's Supplemental Award is not barred by the *functus officio* doctrine, the Union's motion for summary judgment confirming the arbitrator's Supplemental Award is granted.

### D.    Pre-Judgment Interest, Fees & Costs

The Union argues that if this Court grants the Union's motion to enforce the Supplemental Award, this Court should grant the Union pre-judgment interest on the amount assessed against TSG in the Supplemental Award, as well as award attorneys' fees and costs for this action.  The Union's request for interest is based on its contention that because the amount of damages are ascertainable with mathematical precision in this case, this Court should exercise its discretion and award corresponding interest.  The Union's request for fees and costs is based on its contention that TSG's refusal to comply with the Supplemental Award was meritless, and its cross-motion to vacate the Supplemental Award was made in bad faith.  TSG maintains that the Union is entitled to neither pre-judgment interest, nor fees and costs.

#### 1.    *Pre-Judgment Interest*

The award of prejudgment interest is within the discretion of the district court.  See International Ass'n of Bridge, Structural & Ornamental Iron Workers, Local Union No. 103, AFL-CIO v. Higdon Constr. Co., 739 F.2d 280, 283 (7th Cir. 1984) ("award of prejudgment interest in a § 301 (of the Labor Management Relations Act) action is within the discretion of the trial judge"); see also Rack Eng'r Co. v. United Steelworkers of Am., AFL-CIO-CLC, Civ. Doc.

19

No. 90-246, 1990 WL 371773, at *6 (W.D. Pa. June 22, 1990), aff'd, 925 F.2d 419 (3d Cir. 1991) ("[t]here is no provision in the Labor-Management Relations Act for awarding prejudgment interest. In such instances, 'the awarding of prejudgment interest under federal law is committed to the trial court's discretion . . . '") (citation omitted).

The award of prejudgment interest is not punitive in nature, but rather is intended to compensate the employee by providing the grievant with the "time value" of the award in the form of interest thereon.  Rack Eng'r, 1990 WL 371773, at *6.

In the instant action, the award of pre-judgment interest to the Union on the award of back pay and benefits is appropriate and justified to compensate for the time value of the award since the arbitrator rendered his decision.  The Union's request for pre-judgment interest is granted, and must be calculated at the legal interest rate, for the period of time from the date the arbitrator rendered his Supplement Award, up to and including the date TSG satisfies the Supplemental Award's back pay and benefit provisions.

    2.    *Attorneys' Fees And Costs*

It is within this Court's discretion to award attorneys' fees and costs to a union where the employer resists the arbitrator's award without any justification or reasonable chance to prevail. See Chauffeurs, Teamsters & Helpers, Local Union No. 765 v. Eastern Express, Inc., 625 F.2d 1092, 1094 (3d Cir. 1980); Teamsters Local Union v. J.R. Merritt & Co., 770 F.2d 40, 43 n.2 (3d Cir. 1985).  Here, while this Court has found that TSG's motion for summary judgment fails, and the Union is entitled to summary judgment confirming the Supplemental Award, this Court cannot find that TSG's position was without any justification or unreasonable.  The case law addressing the *functo officio* doctrine is complex, and the standards for evaluating the merits of

20

supplemental awards under the doctrine are extremely fact-dependent.  While ultimately unsuccessful, there is no indication that TSG acted unreasonably or in bad faith in challenging the award under the *functus officio* doctrine.

Additionally, TSG's argument that the arbitrator exceeded the scope of his authority was based on an issue - the reinstatement of Demarest to the loader-operator position with built-in overtime - now mooted by recent events, i.e., Demarest's recent unchallenged termination by TSG.  This Court has not rendered any decision on the merits of TSG's position on that aspect of the motion.  This Court cannot find at this juncture that TSG's argument concerning the scope of the arbitrator's authority was unjustified or unreasonable.

Given the drawn out nature of the arbitration proceedings, and the complex manner by which this matter has come before this Court, as well as the lack of evidence of bad faith by TSG, this Court finds that an award of fees and costs would not be justified in this case.  The Union's request for an award of fees and costs is denied.

## IV.  CONCLUSION

For the reasons stated above, because the arbitrator's Supplemental Award is not barred by the *functus officio* doctrine, nor outside the scope of the arbitrator's authority under the CBA, the Union's motion for summary judgment confirming the arbitrator's Supplemental Award is granted.  Conversely, TSG's motion for summary judgment vacating the arbitrator's Supplemental Award is denied.

The Union's request for pre-judgment interest is granted, and its motion for attorneys'

fees and costs is denied.

Dated: June 19, 2007                                s/ Joseph A. Greenaway, Jr.
                                        _____
                                              JOSEPH A. GREENAWAY, JR., U.S.D.J.